UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:17 CR 19 |
| | ) | |
| BRUCE GARCIA | ) | |

## OPINION and ORDER

Defendant Bruce Garcia has filed a motion to suppress evidence in his upcoming probation revocation hearing. (DE # 68.) For the reasons identified below, defendant's motion will be denied.

I.  BACKGROUND

In March 2017, after his arrest and indictment for possession of controlled substances with intent to distribute, defendant was released on bond. (DE # 8.) In April 2017, defendant entered into a plea agreement with the government. (DE # 15.) This court accepted defendant's plea and sentenced him to a two-year term of probation (including a 12-month term of home detention) and payment of a $100 special assessment. (DE # 54.)

On March 22, 2018, while defendant was serving his term of probation, several East Chicago police officers knocked on his door and demanded entrance to his home. (DE # 68-1 at 1.) When defendant refused them entry, the officers used a battering ram to gain admission to his home. (*Id.*) The officers then conducted a warrantless search of defendant's apartment. (*Id.*) During the course of the search, the officers discovered firearms and ammunition in defendant's bedroom.

On March 23, 2018, defendant's probation officer advised this court that defendant had violated the terms of his supervised release. Specifically, defendant's probation officer believes defendant violated the requirements that defendant not commit any further federal, state, or local crimes while on probation, and not own, possess, or control a firearm, ammunition, or other dangerous weapon while on probation. (DE # 57.) Defendant was arrested and awaits his final revocation hearing.

Defendant now moves to suppress evidence of the firearms and ammunition collected, arguing that such evidence was discovered during the course of an illegal search. (DE # 68-1 at 1.) The government opposes the motion, arguing: (1) the exclusionary rule does not apply to probation revocation proceedings; (2) defendant's motion lacks evidentiary support; (3) defendant did not have a reasonable expectation of privacy because he had been evicted from his apartment; and (4) the officers who searched defendant's home were acting pursuant to their community care-taking function and thus did not perform a Fourth Amendment search. (DE # 71.) However, because this court finds that the exclusionary rule does not apply to defendant's probation revocation hearing, the court need not consider the constitutionality of the search itself.

## II.     LEGAL STANDARD

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' The Amendment says nothing about suppressing evidence obtained in violation of this

command. That rule—the exclusionary rule—is a 'prudential' doctrine, created by this Court to 'compel respect for the constitutional guaranty.'" *Davis v. United States*, 564 U.S. 229, 236 (2011) (internal citations omitted). "Exclusion is 'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search. The rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations." *Id.* at 237.

Exclusion is *only* appropriate "where it 'result[s] in appreciable deterrence.'" *Herring v. United States*, 555 U.S. 135, 142 (2009) (internal citation omitted). "We have never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence." *Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 368 (1998). "Suppression of evidence . . . has always been our last resort, not our first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). In determining whether evidence should be excluded, courts must focus on: (1) "the efficacy of the rule in deterring Fourth Amendment violations in the future;" and (2) whether the benefits of deterrence outweigh the substantial social cost of exclusion, i.e. "letting guilty and possibly dangerous defendants go free . . ." *Herring*, 555 U.S. at 141.

III.  **DISCUSSION**

Defendant does not cite a single case or other legal authority in support of his motion to suppress. The only case he does cite is *Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357 (1998), which he attempts to distinguish. For the reasons explained below, the holding in *Scott* applies to this case, and thus defendant may not use the

3

exclusionary rule to preclude admission of the evidence discovered during the search of his home.

In *Scott*, the Supreme Court considered whether the exclusionary rule applies in parole revocation hearings. *Id.* at 359. There, the defendant argued that weapons discovered in his home – and subsequently used to revoke his parole – were the product of an unreasonable search under the Fourth Amendment and therefore could not be used against him during the revocation hearing. *Id.* at 361. The Supreme Court began its analysis by noting that it has "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials[.]" *Id.* at 363. For example, the Court has declined to extend the rule to grand jury proceedings, civil tax proceedings, or civil deportation proceedings. *Id.* Turning to the merits of the case before it, the Court once again declined the invitation to extend the operation of the rule, for three reasons.

First, "[a]pplication of the exclusionary rule would both hinder the functioning of state parole systems and alter the traditionally flexible, administrative nature of parole revocation proceedings." *Id.* at 364. Because parole revocation deprives a parolee of only conditional liberty, "States have wide latitude under the Constitution to structure parole revocation proceedings," and most States have opted for informal, administrative parole revocation procedures. *Id.* at 365-66. The Court found that application of the exclusionary rule would significantly alter the informal process most States have adopted, by introducing extensive litigation regarding the exclusion of evidence at the hearing. "Although States could adapt their parole revocation

4

proceedings to accommodate such litigation, such a change would transform those proceedings from a 'predictive and discretionary' effort to promote the best interests of both parolees and society into trial-like proceedings 'less attuned' to the interests of the parolee." *Id.* at 366-67 (internal citations omitted).

Second, "[t]he rule would provide only minimal deterrence benefits in this context, because application of the rule in the criminal trial context already provides significant deterrence of unconstitutional searches." *Id.* "[T]he remote possibility that the subject is a parolee and that the evidence may be admitted at a parole revocation proceeding surely has little, if any, effect on the officer's incentives." *Id.* at 367. Moreover, even if the searching officer was aware of the parolee's status, application of the exclusionary rule would not yield appreciable deterrent value. A police officer searching a parolee's residence would have an eye toward collecting evidence for a future criminal trial, and is thus already sufficiently deterred from collecting evidence in violation of the Fourth Amendment. *Id.* at 368. To the extent that the searching officer was a parole officer, the officer's primary concern is whether the parolee should remain free on parole, and therefore the officer's relationship with the parolee is supervisory in nature, not adversarial, and no deterrence is necessary. *Id.*

Finally, the Court declined to extend the exclusionary rule to parole revocation proceedings in light of the high social costs that result from application of the rule. "Because the exclusionary rule precludes consideration of reliable, probative evidence, it imposes significant costs: It undeniably detracts from the truthfinding process and

allows many who would otherwise be incarcerated to escape the consequences of their actions." *Id.* at 364. These costs are particularly high in the context of parole revocation proceedings, where States are generally only willing to extend the opportunity for parole because it can enforce compliance with the conditions of parole. *Id.* at 365. "The State thus has an 'overwhelming interest' in ensuring that a parolee complies with those requirements and is returned to prison if he fails to do so." *Id.* Moreover, "[t]he costs of allowing a parolee to avoid the consequences of his violation are compounded by the fact that parolees (particularly those who have already committed parole violations) are more likely to commit future criminal offenses than are average citizens." *Id.*

In light of these considerations, the Court concluded "[a] federal requirement that parole boards apply the exclusionary rule . . . would severely disrupt the traditionally informal, administrative process of parole revocation. The marginal deterrence of unreasonable searches and seizures is insufficient to justify such an intrusion. We therefore hold that parole boards are not required by federal law to exclude evidence obtained in violation of the Fourth Amendment." *Id.* at 369.

Defendant attempts to distinguish *Scott* by arguing that the facts in *Scott* are "significantly" different. First, he argues that the defendant in *Scott* was on parole, while he was on probation. (DE # 68-1 at 2.) This argument fails because the same protections apply to defendants in parole, probation, and supervised release revocation hearings. *See United States v. Kelley*, 446 F.3d 688, 691 (7th Cir. 2006).

6

Defendant next attempts to distinguish *Scott* on the basis that the Court in *Scott* considered a state – not federal – revocation proceeding. However, the Supreme Court's holding in *Scott* was not limited to state proceedings. The Court stated its holding at least four times and never indicated that it was limited to state proceedings.[1] *See also United States v. Armstrong*, 187 F.3d 392, 394 (4th Cir. 1999) ("[A]ppellant contends that *Scott* is distinguishable because it involved a state, rather than a federal, revocation proceeding. In *Scott*, however, the Court did not find the fact that the proceeding was a state proceeding determinative.")

Moreover, even if the holding in *Scott* applied only to state revocation hearings, the reasoning the Court applied in *Scott* applies with equal force in federal revocation hearings. First, it is equally important that federal revocation hearings maintain its flexible and discretionary nature, so as to avoid extensive litigation into whether evidence must be excluded. Second, as with their state counterparts, federal law enforcement officers have sufficient existing deterrents to prevent unconstitutional searches, such that application of the rule to federal revocation proceedings would not

---

[1] *See Scott*, 524 U.S. at 359 ("This case presents the question whether the exclusionary rule, which generally prohibits the introduction at criminal trial of evidence obtained in violation of a defendant's Fourth Amendment rights, applies in parole revocation hearings. We hold that it does not."); *Id.* at 362 ("We granted certiorari to determine whether the Fourth Amendment exclusionary rule applies to parole revocation proceedings."); *Id.* at 364 ("We therefore hold that the federal exclusionary rule does not bar the introduction at parole revocation hearings of evidence seized in violation of parolees' Fourth Amendment rights."); *Id.* at 369 ("We therefore hold that parole boards are not required by federal law to exclude evidence obtained in violation of the Fourth Amendment.").

have an 'appreciable' deterrent value. Finally, the significant social costs identified by the Supreme Court in *Scott* (namely, the exclusion of reliable, probative evidence and the possibility of permitting the defendant to escape the consequences of his actions) remain the same whether the revocation proceeding is under a state or federal scheme.

The Seventh Circuit does not appear to have spoken directly on the issue of whether the exclusionary rule applies to federal revocation proceedings.[2] However, the Seventh Circuit has recognized that "the exclusionary rule . . . is applicable only to criminal proceedings," *Medlock v. Trustees of Indiana Univ.*, 738 F.3d 867, 871 (7th Cir. 2013), and "a revocation proceeding, because it focuses on the modification of a sentence already imposed and implicates the conditional (rather than absolute) liberty that the defendant enjoys as a result of that sentence, is not considered to be a stage of a criminal prosecution." *United States v. Boultinghouse*, 784 F.3d 1163, 1171 (7th Cir. 2015).

Additionally, at least nine other circuit courts of appeal have found that the exclusionary rule does not apply to federal revocation hearings. *See e.g. U. S. ex rel. Sperling v. Fitzpatrick*, 426 F.2d 1161, 1163 (2d Cir. 1970); *United States v. Bazzano*, 712 F.2d 826, 829 (3d Cir. 1983); *United States v. Hope*, 609 F. App'x 156 (4th Cir. 2015); *United States v. Brown*, 488 F.2d 94, 95 (5th Cir. 1973); *United States v. Farmer*, 512 F.2d 160, 162–63 (6th Cir. 1975); *United States v. Frederickson*, 581 F.2d 711, 713 (8th Cir. 1978);

---

[2] The Court came closest to deciding the issue in *United States v. Hill*, 447 F.2d 817, 819 (7th Cir. 1971) ("The Government thus urges that considerations of policy dictate the exclusionary rule not be extended to probation or parole revocation proceedings . . . We agree.") However, the Court ultimately decided the case on other grounds.

*United States v. Hebert*, 201 F.3d 1103, 1104 (9th Cir. 2000); *United States v. Finney*, 897 F.2d 1047, 1047 (10th Cir. 1990); *United States v. Diallo*, 711 F. App'x 507, 512 (11th Cir. 2017). *See also United States v. Phillips*, 2018 WL 920649, at *1–2 (C.D. Ill. Feb. 16, 2018); *Cary v. United States*, 2017 WL 6543863, at *2 (C.D. Ill. Dec. 21, 2017); *Johnson v. United States*, 2015 WL 3544881, at *3 (S.D. Ill. June 5, 2015).

Defendant's final attempt to distinguish *Scott* is to point out that, in *Scott*, parole officers conducted the search, whereas in this case, no probation officers were present during the search of his apartment. (DE # 68-1 at 2.) Once again, defendant attempts to narrow the application of the Supreme Court's holding in *Scott* in a manner not supported by the Court's opinion. The Court held that "the federal exclusionary rule does not bar the introduction at parole revocation hearings of evidence seized in violation of parolees' Fourth Amendment rights" – it did not equivocate based on *who* violated the parolee's rights. *Scott*, 524 U.S. at 364. In fact, the Court specifically considered a situation where a police officer – rather than a parole officer – conducted the search. The Court found that even in a situation where a police officer conducted the search, application of the exclusionary rule would not have a sufficiently strong deterrent value upon the police officer to justify application of the rule. *See id.* at 368. Circuit courts that have declined to apply the exclusionary rule to revocation proceedings have likewise not made any distinction regarding who discovered the evidence. *See e.g. Hill*, 447 F.2d at 817 (search conducted by two city police officers); *Diallo*, 711 F. App'x 507, 509 (11th Cir. 2017) (search conducted by private security

9

officer, then police officer); *United States v. Armstrong*, 187 F.3d 392, 392 (4th Cir. 1999) (search conducted during routine traffic stop); *United States v. Montez*, 952 F.2d 854, 855 (5th Cir. 1992) (search conducted by agents of U.S. Bureau of Alcohol, Tobacco and Firearms). The Supreme Court in *Scott* declined to extend the exclusionary rule in this context to avoid the type of piecemeal distinctions defendant presently asks this court to create. This court finds that no such distinction is warranted.

In light of the Supreme Court's holding in *Scott*, and after consideration of the deterrent value and social cost that would result from application of the exclusionary rule in this context, the court finds that the exclusionary rule is inapplicable to defendant's probation revocation hearing. Defendant's motion to suppress will be denied.

### IV. CONCLUSION

For these reasons, the court **DENIES** defendant's motion to suppress. (DE # 68.) The court will set this matter for revocation hearing under a separate order.

**SO ORDERED.**

Date: June 26, 2018

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT